UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS NUNEZ, JR., | No. 2:12-cv-02775-JAM-KJN P |
| Plaintiff, | |
| v. | <u>ORDER</u> and |
| K. M. PORTER, et al., | <u>FINDINGS AND RECOMMENDATIONS</u> |
| Defendants. | |

I. <u>Introduction</u>

Plaintiff is a state prisoner, currently incarcerated at Calipatria State Prison (CSP), who proceeds without counsel and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. This case proceeds on the original complaint against defendants K.M. Porter, D. Till, S. Norton, and D. Caraballo, each a correctional sergeant at California State Prison-Sacramento (CSP-SAC).

Presently pending is defendants' motion to dismiss the following claims: (1) plaintiff's First Amendment claims against defendants Caraballo, Till and Norton, for failure to exhaust administrative remedies; (2) plaintiff's First Amendment claims against defendant Caraballo for failure to state a claim; and (3) plaintiff's Fourteenth Amendment claims against all defendants for failure to state a claim. Defendants concede that the complaint states a potentially cognizable and administratively exhausted First Amendment claim against defendant Porter.

For the reasons that follow, this court recommends that defendants' motion be granted in part, and denied in part.

II.  Defendants' Motion to Strike

Plaintiff filed an opposition (ECF No. 24) to defendants' motion to dismiss (ECF No. 20); defendants filed a reply (ECF No. 28).  Within a week of filing his opposition, plaintiff submitted an "Amendment to Opposition" (Amendment) (ECF No. 26), in which he requests that the court consider three new exhibits, and plaintiff's refined legal arguments, together with plaintiff's original opposition.  Defendants move to strike plaintiff's Amendment (ECF No. 29); plaintiff has filed a response (ECF No. 30).

Defendants assert that plaintiff's Amendment should be stricken because filed outside the briefing deadlines set by the court.  Plaintiff responds that his Amendment is better characterized as a "Supplement," because it contains newly acquired evidence that is relevant to the court's decision, and the submission of this evidence demonstrates plaintiff's attempt to provide the most complete record possible.  Moreover, plaintiff argues, defendants do not assert that they have been prejudiced by plaintiff's additional briefing and exhibits.

Review of plaintiff's opposition and proposed Amendment, together with their respective exhibits, demonstrates that the court's consideration of both filings are necessary to a thorough assessment of the merits of defendants' motion to dismiss, particularly based on failure-to-exhaust grounds.[1]  Although the Local Rules do not provide for the unauthorized submission of an amendment or supplement to an opposition, see generally Local Rule 230(l), Ninth Circuit authority concerning the appropriate evaluation of a motion to dismiss for failure to exhaust administrative remedies, see n.1 supra, and good cause grounded in plaintiff's pro se status and

---

[1] As set forth in defendants' own notice to plaintiff concerning the requirements for opposing a motion to dismiss for failure to exhaust administrative remedies, "[t]he court is authorized to resolve factual disputes against any party based on the evidence submitted by the parties;" plaintiff has "the right to present any evidence to show that [he] did exhaust [his] available administrative remedies before coming to federal court;" and if plaintiff fails to submit evidence in opposition to defendants' motion to dismiss, his case may be dismissed.  (ECF No. 20 at 2; ECF No. 24 at 2.)  See Woods v. Carey, 684 F.3d 934, 940 n.6 (9th Cir. 2012); Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003); and Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

belated finding of pertinent documents, supports the court's consideration of both plaintiff's opposition and his Amendment.

Accordingly, defendants' motion to strike plaintiff's Amendment is denied.

III. The Complaint

The complaint alleges that defendants Porter, Till, Norton, and Caraballo, acting in retaliation against plaintiff for assisting another inmate with prison grievances and civil litigation, or for challenging these matters in an administrative grievance, each filed, ratified or otherwise endorsed false disciplinary charges against plaintiff and/or ruled against plaintiff in his related administrative challenge.

The complaint alleges that, while plaintiff was incarcerated at CSP-SAC, in the Correctional Treatment Center (CTC) (also referred to as the "Taj Mahal"), he served as Chairman of the "Men's Advisory Counsel" (sic) (MAC), and was a recognized "Prisoner Laymen" (sic), known for his legal advocacy skills. Plaintiff alleges that inmate Giraldes, also housed in the CTC, "requested that plaintiff raise the issue of obtaining the Antenna Wall Cable System for the inmates housed in the CTC at a Warden's Meeting, so they could receive regular [programming] over the air channels." (Complaint, ECF No. 1 at 3.) When the administrative request to the warden proved unsuccessful, plaintiff assisted Giraldes in filing a related civil action. Allegedly in retaliation for this advocacy, defendant Porter, a Correctional Sergeant, authored three allegedly false disciplinary "write-ups" against plaintiff. Plaintiff asserts that "two of the three write-ups resulted in CDC-128A, 'Custodial Counseling Chronos,' which by (CDCR) [California Department of Corrections and Rehabilitation] policy cannot be challenged for the purpose of having them removed from one's file." (Id. at 5.) The complaint alleges that this action resulted in a loss of plaintiff's privileges, and will prejudice him at his next Parole Board Hearing.

The complaint identifies the following two "write-ups," without clearly explaining the third: (1) Rules Violation Report (RVR) Log No. A-11-07-002 ("Out of Bounds"); and (2) RVR Log No. A-11-08-003 ("Job Performance"). However, the exhibits attached to plaintiff's opposition and Amendment identify the following pertinent disciplinary matters:

3

    1. <u>CDC 128-A (Custodial Chrono) Log No. FA8-208, dated <u>May 10, 2011</u></u>: Prepared by Correctional Sergeant Porter, finding that plaintiff had talked through the back window of his workplace, the Canteen, to other inmates, despite having been previously and repeatedly informed that the area is "Out-of-Bounds for loitering." (ECF No. 24 at 26.)

    2. <u>RVR Log No. A-11-07-002 ("Out-of-Bounds"), dated <u>July 11, 2011</u></u>: Prepared by Correctional Sergeant Porter, reporting that plaintiff had again talked through the back window of the Canteen to another inmate, despite prior disciplinary action for the same violation, and despite the fact that the area is clearly designated "out of bounds." Porter stated that he "again" spoke with Canteen Manager Harmon of the need to prevent such unauthorized conduct. On July 30, 2011, Correctional Sergeant Till found plaintiff "guilty" of the charge. Plaintiff received a CDC-128A (Counseling Chrono) and 5-day loss of weekend yard privileges, without credit forfeiture. (<u>See</u> ECF No. 24 at 22-3; <u>see</u> also ECF No. 26 at 11-2.)

    3. <u>RVR Log No. A-11-08-003 ("Job Performance"), dated <u>August 8, 2011</u></u>: Prepared by Correctional Sergeant Porter, reported that plaintiff had posted an unauthorized sign in the Canteen window that read: "Do not approach or talk to the canteen worker at this window subject to a CDC-115 per Sergeant Porter." (ECF No. 24 at 24; <u>see</u> <u>also</u> ECF No. 26 at13.) Canteen Manager Harmon reportedly stated that plaintiff "does canteen money checks for the inmates on the yard out the back window which is a violation of current policy." (<u>Id.</u>) Sergeant Porter opined that "Canteen Manager Harmon is still allowing Nunez to break the rules of working in A-Facility Canteen," and requested that plaintiff "be removed from the position of Canteen Clerk A-Facility . . . due to his constant violation of the rules of his job." (<u>Id.</u>) On August 10, 2011, Correctional Sergeant Norton found plaintiff "guilty" of the charge. Plaintiff was assessed "10 days loss of evening dayroom and telephone privileges," and "10 day loss of weekend yard program," and was referred to the Institutional Classification Committee (ICC) for removal from his job assignment. (ECF No. 26 at 13-4.)

    4. RVR Log No. A-11-08-003 led to Sergeant Porter's completion of another <u>CDC 128-A (Counseling Chrono) Log No. FA8-205, dated August 15, 2011</u>. (<u>Id.</u> at 27.)

    The complaint alleges that defendant Till, also a Correctional Sergeant, was the hearing officer assigned to review Porter's write-up against plaintiff for being "Out of Bounds" while working at the canteen (Log No. A-11-07-002). The complaint alleges that defendants Till and Porter are "friends," and that defendant Till "was often in the company of defendant Porter," and therefore biased against plaintiff. (ECF No. 1 at 6, 7.) The complaint alleges that, in response to plaintiff pleading "not guilty" to the charge, Till stated: "'[A]lthough I know that you are

4

innocent and were at your job assignment, I'm going to find you guilty and make you win on appeal. This is what you get for backing that asshole Giraldes, and there will more if you keep up your shit and don't wise up. . . .'" (Id. at 6.) Plaintiff contends that defendant Till "used his position as the Disciplinary Hearing officer for this write-up to retaliate against plaintiff for him assisting inmate Giraldes as a MAC Member. . . ." (Id.) The complaint alleges that this disciplinary action was later dismissed by the Chief Disciplinary Officer because the allegations failed to meet the institutional criteria for "Out of Bounds." (Id. at n.2.)

The complaint further alleges that, on August 10, 2011, defendant Norton, another Correctional Sergeant, and also an alleged friend of Porter, was assigned as the hearing officer to consider plaintiff's disciplinary write-up concerning his "Job Performance" (Log No. A-11-08-003). The complaint alleges that plaintiff's "supervisor, Ms. Harmon[,] clearly stated to defendant Norton on the day of the hearing that she asked plaintiff to put up the sign that led to the 'Poor Job Performance write-up.' He [Norton] did not allow her testimony at the hearing. Norton stated, 'I don't care what you have to say, you can't help him. . . .'" (Id. at 8.) The complaint alleges that Norton "knowingly found plaintiff guilty for the write-up authored by defendant Porter, even though, he was told by plaintiff's civilian work supervisor that she instructed plaintiff to put the sign up." (Id. at 7.) The complaint alleges that Norton, like Till, was a friend of Porter, and acted in tandem with the other defendants to retaliate against plaintiff for exercising his First Amendment rights.

The complaint next alleges that plaintiff filed an administrative grievance asserting that defendants were retaliating against plaintiff for the exercise of his First Amendment rights. Defendant Caraballo, a Correctional Sergeant, was assigned as the First Level reviewer of the grievance. Plaintiff alleges that Caraballo commenced the First Level Review on October 6, 2011, in the prison canteen. However, on October 7, 2011, defendant Caraballo allegedly summoned plaintiff to the CTC, where he asked plaintiff more questions in the presence of defendant Till and another, unnamed, Correctional Sergeant; Till was seated behind plaintiff. The complaint alleges that Caraballo and Till tried to persuade plaintiff to cancel the grievance, as he had allegedly tried the day before. When plaintiff refused, Caraballo allegedly asked, "'Who was

5

the Hearing Officer again on the Out of Bounds write-up?'" Plaintiff was required to identify Till. Caraballo denied plaintiff's grievance in a written decision issued October 11, 2011. (ECF No. 1 at 17-8.) The complaint alleges that Caraballo and Till sought to intimidate plaintiff at the hearing, and that this conduct, together with Caraballo "upholding" the allegedly unsupported "guilty finding" on the Out-of-Bounds charge,[2] were retaliatory acts against plaintiff for utilizing the administrative appeals process.[3]

Based on these alleged facts, the complaint alleges in conclusion that "[a]ll defendants violated plaintiff's protected conduct under the Federal Constitutional (sic), which are rights guaranteed to plaintiff [as] a state prisoner under the First and Fourteenth Amendments. . . ." (ECF No. 1 at 10.) Plaintiff seeks declaratory relief, damages, and costs.

IV. Motion to Dismiss Based on Alleged Failure to Exhaust Administrative Remedies

Defendants move to dismiss defendants Caraballo, Till and Norton from this action on the ground that plaintiff allegedly failed to exhaust his available administrative remedies as to these defendants. Defendants concede that "[p]laintiff exhausted his administrative remedies against Defendant Porter." (ECF No. 28 at 2.)

A. Legal Standards for Motion Premised on Alleged Failure to Exhaust

In the Ninth Circuit, motions to dismiss for failure to exhaust administrative remedies are normally brought, as here, pursuant to an "unenumerated Rule 12(b)" motion, Federal Rules of Civil Procedure. See Albino v. Baca, 697 F.3d 1023, 1029 (9th Cir. 2012). Review of an exhaustion motion requires the court to look beyond the pleadings in "a procedure closely analogous to summary judgment." Wyatt v. Terhune, supra, 315 F.3d at 1119 n.14. "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119.

---

[2] Carabello denied plaintiff's administrative grievance at the First Level, based on the finding that Porter had "acted appropriately," without evidence that she had acted in retaliation against plaintiff. (See ECF No. 24 at 17-8.)

[3] The complaint further alleges that, the next day, on October 8, 2011, "they" (referencing Porter and/or Till and/or Carabello) further retaliated when they "falsified the reason to remove plaintiff and the MAC Body Members from their MAC Room." (ECF No. 1 at 7.)

6

The Prison Litigation Reform Act (PLRA) provides that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Pursuant to this rule, prisoners must exhaust their administrative remedies regardless of the relief they seek, i.e., whether injunctive relief or money damages, even though the latter is unavailable pursuant to the administrative grievance process. Booth v. Churner, 532 U.S. 731, 741 (2001). Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81 (2006). However, "a prisoner need not press on to exhaust further levels of review once he has received all 'available' remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available." Brown v. Yaloff, 422 F.3d 926, 935 (9th Cir. 2005).

The PLRA requires that available administrative remedies be exhausted prior to filing suit. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002). The exhaustion requirement is not jurisdictional, but an affirmative defense that may be raised by a defendant in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b). See Jones v. Bock, 549 U.S. 199, 216 (2007) ("inmates are not required to specially plead or demonstrate exhaustion in their complaints"); see also Wyatt, 315 F.3d at 1117-19 (failure to exhaust is an affirmative defense). Defendants bear the burden of raising and proving the absence of exhaustion, and their failure to do so waives the defense. Id. at 1119.

When a district court concludes that a prisoner has not exhausted his available administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt, 315 F.3d at 1120; see also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005) ("mixed" complaints may proceed on exhausted claims). Thus, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 549 U.S. at 221.

////

B. <u>Subject Administrative Appeal</u>

Defendants submitted a copy of plaintiff's only pertinent administrative appeal (Log No. SAC-11-00796). The appeal was considered exhausted at the Second Level of review, as is routine for administrative challenges to a Rules Violation Report. (<u>See</u> ECF No. 20-1 at 3, 5, 7; <u>see also</u> ECF No. 24 at 11-2.) Plaintiff made the following allegations in his initial appeal, designated a "Staff Complaint," and entitled by plaintiff, "Denial of Due Process, Harassment, Retaliation, False Charges" (ECF No. 20-2 at 6-7; ECF No. 24 at 13, 15):

> On June 11, 2011, I was falsely charged with a CCR Title 15 Rules Violation by Correctional Sergeant K.M. Porter. As a form of harassment this same sergeant again wrote this appellant up for violating CCR Title 15 Rules. This was the third time this sergeant made the decision to act in a retaliatory manner towards this appellant, causing him to lose privileges even though the charged offenses were dismissed and/or cleared of being a rules violation. Moreover, as a life prisoner, these charges will surely affect his possible chances at parole. Sergeant Porter had clear knowledge that I was "not" out-of-bounds when she charged me with being out of bounds. Because I have a relationship with inmate Giraldes she has chosen to retaliate towards me because he exercises his right to litigate against her assigned work area (CTC). I have two guilty findings now in my record (although dismissed and lowered to 128) due to two impatial (sic) decisionmakers (friends) of this sergeant. Sergeant K. M. Porter's actions have violated my federal constitutional rights to: Due Process of law, First (1st) Amendment, and 8th Amendment protections. It is very clear that the "BBT" uses 128 chronos against lifers.

Plaintiff requested that Sergeant Porter "be reprimanded" and "re-trained," and that plaintiff be awarded damages.

Defendant Caraballo denied the appeal at the First Level. Plaintiff requested further review (in Part D of the appeal), on the following grounds (ECF No. 20-2 at 8-9; ECF No. 24 at 14, 16):

> The First Level Response fails to address the appeal issues. Sgt. Porter and Sgt. Till conspired to draft fraudulent and factually impossible reports circumventing RVR processing mandates to do so, and arranged for a hearing to be had where a "false" finding of guilt could be assured. This is all due to my advocating (as a MAC member) on behalf of inmate Giraldes, who is housed in the CTC, and who Sgt. Porter and Sgt. Till tried to have assaulted. The advocating turned their rights (sic) towards me, and false retaliatory charges ensued. Inmates have the right to appeal an action and assist others in their appeals, and [it] is a guaranteed right that these sergeants are attempting to chill. All reports written by Sgt. Porter

> claim impossible scenarios, and are driven by my refusal to get Giraldes to withdraw his appeals against her and when I refused to withdraw the instant appeal, she and Sgt. Till immediately ordered I loose (sic) access to the assigned MAC office. Failure to address the actual issues in this appeal only proves the point to be made in the civil suit I am filing after exhaustion. The First Level reviewer, Sgt. Caraballo's intimidation tactic of calling me to Taj Mahal so he could seat me with Sgt. Till seated behind me asking me, "If I know who the hearing sergeants were?" and if I know who the staff are that involved in the false RVR situation, is a perfect example of the threats of reprisal, both implied and implemented. These staff use to get inmates to withdrawal their appeals. The reviewer left all issues unaddressed, and rewrote the appeal without making any actual findings. This is only beneficial as long as staff are hidden behind CSP-SAC walls. Please exhaust so we can get outside the walls where rational decision makers can decide if this conduct should go unpunished. The First Level Reviewer, Sgt. Caraballo, spent more time trying to convince me to withdraw the appeal than taking down my statement on my appeal issues, with Sgt. Till seated behind me in Taj Mahal.

Attached to the appeal were copies of plaintiff's RVRs, Log Nos. A-11-07-002, and A-11-08-003, and plaintiff's CDC 128-A, dated May 10, 2011.

At the Second Level Review, CSP-SAC Warden T. Virga denied the appeal, finding that plaintiff had "offered no proof that he is/was being retaliated against," and "offered no proof, nor has he submitted any evidence to substantiate his claims" that Porter falsely charged plaintiff, or that plaintiff's constitutional rights had been violated. (ECF No. 20-1 at 9-10.)

This grievance was deemed exhausted at the Second Level Review. (See ECF No. 20-1 at 7.)

C. Analysis

Defendants contend that plaintiff "never submitted an administrative appeal regarding the alleged incidents involving Defendants Caraballo, Norton, and Till." (ECF No. 20 at 7.) While defendants concede that plaintiff asserted allegations of misconduct by defendants Till and Caraballo in Part D of the appeal (when plaintiff requested Second Level review), defendants assert that these allegations cannot be construed as part of the appeal because not originally asserted, and because CDCR regulations require that each appeal be limited to "one issue" that identifies "all staff member(s) involved." (ECF No. 20 at 7 n.1 (citing 15 Cal. Code Regs. §§ 3084.2(a)(1)-(3)).

The cited regulation is expressly broader than defendants assert, requiring that each appeal be "limited to one issue *or related set of issues . . . .*" Id., § 3084.2(a)(1) (emphasis added). More importantly, pertinent case law authorizes civil actions against defendants who were not named in the underlying administrative appeal, based on legal claims that were not then fully articulated. In Griffin v. Arpaio, 557 F.3d 1117 (9th Cir. 2009), the Ninth Circuit adopted the standard enunciated in Strong v. David, 297 F.3d 646 (7th Cir. 2002), that "when a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" Griffin, 557 F.3d at 1120 (quoting Strong, 297 F.3d at 650). "A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Griffin, 557 F.3d at 1120 (Arizona grievance procedures); accord Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010) (California grievance procedures). Further, the Supreme Court has held that, absent an express requirement to the contrary, "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." Jones v. Bock, 549 U.S. at 219.

The court finds the subject administrative appeal reasonably construed to include plaintiff's retaliation claims against defendants Caraballo, Till and Norton, as well as defendant Porter. There is no authority to support defendants' argument that plaintiff's allegations against Caraballo and Till are foreclosed because initially raised in Part D of the appeal. Plaintiff's allegations, taken together, clearly assert that these defendants, like defendant Porter, were retaliating against plaintiff due to his advocacy in support of inmate Giraldes. Moreover, based on the allegedly false and retaliatory nature of the underlying disciplinary charges, the administrative appeal implicitly encompasses plaintiff's allegations that defendant Norton also acted in retaliation, particularly after allegedly refusing the exculpatory statement offered by Canteen Manager Harmon. The complaint identifies defendants Till and Norton as the "two friends" of Porter identified in Part A of the appeal. The court finds that this appeal, taken as a

whole, alerted prison officials to plaintiff's allegations that these correctional officials were retaliating against plaintiff for exercising his First Amendment rights, Griffin, 557 F.3d at 1120, specifically, by Porter allegedly filing false disciplinary charges against plaintiff, and by Till and Norton finding plaintiff guilty of these charges, in retaliation for plaintiff's advocacy in support of Giraldes; and by Caraballo and Till attempting to intimidate and threaten plaintiff in an effort to persuade him to withdraw his administrative grievance challenging these charges and findings. These allegations reasonably alerted prison officials to a problem of alleged constitutional significance, amenable to institutional resolution. Id. Although, at the Second Level Review, Warden Virga found no irregularities requiring resolution, the appeal adequately set forth plaintiff's pertinent factual allegations against these defendants.

For these reasons, the court finds that plaintiff exhausted his administrative remedies concerning his First Amendment retaliation claims against all named defendants, viz., Porter, Caraballo and Till and Norton. Defendants' motion to dismiss defendants Carballo, Till, and Norton on exhaustion grounds should therefore be denied.

V. Motion to Dismiss Based on Alleged Failure to State a Claim

Defendants move to dismiss, for failure to state a cognizable claim, plaintiff's First Amendment claim against defendant Caraballo, and plaintiff's Fourteenth Amendment claims against all defendants.

A. Legal Standards for Motion Premised on Alleged Failure to State a Claim

A motion to dismiss, for failure to state a claim, is brought pursuant to Rule 12(b)(6), Federal Rules of Civil Procedures, which authorizes motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007).

However, "[s]pecific facts are not necessary; the statement [of facts] need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson, 551 U.S.89, (quoting Bell Atlantic, 550 U.S. at 554) (internal citation and quotation marks omitted).

### B. First Amendment Claims

Defendants move to dismiss plaintiff's First Amendment claim against defendant Caraballo for failure to state a claim.

Defendants correctly contend that plaintiff has failed to state a claim against defendant Caraballo on the ground that he denied plaintiff's administrative grievance at the First Level Review. A prisoner has no constitutional right to an effective or favorable grievance procedure. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), cert. denied, 541 U.S. 1063 (2004) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)); accord, George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) ("[r]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation"); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (prison official whose only role involved the denial of a prisoner's administrative grievance cannot be held liable under Section 1983), cert. denied, 530 U.S. 1264 (2000); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (a "prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates") (internal punctuation omitted).

Defendants do not otherwise challenge the sufficiency of plaintiff's First Amendment retaliation claim against defendant Caraballo or any other defendant, nor is there presently a basis for doing so. Plaintiff has adequately stated a prima facie retaliation claim against each defendant. Plaintiff's factual allegations, as set forth in his administrative grievance and this action, include each of the five basis elements required to state a viable First Amendment retaliation claim within the prison context: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (fn. and citations omitted).

////

Here plaintiff has adequately alleged that defendant Porter filed false disciplinary charges against plaintiff because he advocated on behalf of a fellow inmate, resulting in a direct harm to plaintiff that did not advance a legitimate correctional goal.[4]  Similarly, plaintiff has adequately alleged that defendants Till and Norton, similarly motivated, knowingly found plaintiff guilty of these false charges, causing further direct harm.  Finally, plaintiff has adequately alleged that defendants Caraballo and Till conspired to intimidate and threaten plaintiff to withdraw his related administrative grievance, an inherently unconstitutional retaliatory act.[5]  Rhodes, 408 F.3d at 567-68.

Pursuant to these allegations, plaintiff's First Amendment retaliation claims should proceed against all named defendants.

C.  Fourteenth Amendment Claims

Defendants next seek to dismiss plaintiff's Fourteenth Amendment claims against all defendants for failure to state a claim.

Plaintiff alleges that his loss of privileges, as a result of receiving two CDC-128A Counseling Chronos "resulted in plaintiff losing privileges that are protected under the Due

---

[4] At the pleading stage, the "chilling" requirement is met if the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'" Rhodes, 408 F.3d at 568 (quoting Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).  However, direct and tangible harm will support a First Amendment retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights.  Rhodes, 408 F.3d at 568 n.11.  "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as a retaliatory adverse action.  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing Rhodes, 408 F.3d at 568, n11).  The plaintiff need not prove that the alleged retaliatory action, in itself, violated a constitutional right.  Pratt v. Rowland, 65 F.3d 802, 806 (1995) (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); see also Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997) (upholding jury determination of retaliation based on filing of a false rules violation report); Rizzo v. Dawson, 778 F.2d 527, 531 (transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim).  Rather, the interest asserted in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive.

[5] Filing administrative grievances and initiating litigation are protected activities, and it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. Rhodes, 408 F.3d at 567-68.

Process Clause of the Federal Constitution, i.e. loss of yard privileges." (ECF No. 1 at 5.) In opposition to the pending motion, plaintiff explains that this due process claim is based on his anticipated loss of liberty should the Parole Board, at plaintiff's next parole hearing, deny plaintiff parole due to these disciplinary findings. Plaintiff has submitted a copy of his January 5, 2010 parole denial which recommends, in anticipation of plaintiff's next parole hearing in 2017, that he "stay disciplinary free," receive "no more 115's or 128A's," and "earn positive chronos." (ECF No. 26 at 16-7.)

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. Rather, the minimum procedural requirements that must be met in a prison disciplinary proceedings are as follows: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).

The anticipatory reliance of the Parole Board on the subject disciplinary findings does not sustain a due process claim. Plaintiff does not claim, and the record does not support a finding,

14

that the subject disciplinary hearings failed to satisfy the minimum requirements identified in Wolff.[6]

For these reasons, the court finds that defendants' motion to dismiss plaintiff's Fourteenth Amendment claims should be granted on behalf of all defendants. As a result, this action should proceed only on plaintiff's First Amendment retaliation claims.

VI. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendants' motion (ECF No. 29) to strike plaintiff's Amendment is denied.

In addition, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 20) be granted in part, and denied in part.

2. Plaintiff's Fourteenth Amendment claims should be dismissed in their entirety, as to all defendants.

3. This action should proceed only on plaintiff's First Amendment retaliation claims against all named defendants, viz., defendants Porter, Till, Norton and Caraballo.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, petitioner any party may file written

---

[6] Moreover, plaintiff cannot pursue a civil rights damages claim based on an allegedly false disciplinary finding that remains in effect. "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) (fn. omitted). While plaintiff asserts in a footnote that the disciplinary action on his Out-of-Bounds charge "was eventually dismissed and voided . . . by the Chief Disciplinary Officer" (ECF No. 1 at 6 n.2), plaintiff has submitted no evidence or citation to support this assertion (and if it was so dismissed, presumably it will not be relied upon by the Parole Board).

1  objections with the court and serve a copy on all parties. Such a document should be captioned

2  "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

3  objections shall be filed and served within fourteen days after service of the objections. The

4  parties are advised that failure to file objections within the specified time may waive the right to

5  appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

6  DATED:

7  Dated:  January 10, 2014

8

9  /nune2775.mtd

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE