1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CURTIS NUNEZ, JR.,                          No.  2:12-cv-02775-JAM-KJN P

12              Plaintiff,

13        v.                                     **AMENDED**

14   K. M. PORTER, et al.,                       ORDER and

15              Defendants.                      FINDINGS AND RECOMMENDATIONS

16

17   I.  Preface

18         Pursuant to the court's review of defendants' objections, filed January 24, 2014, to the

19   undersigned's Order and Findings and Recommendations filed January 10, 2014, the undersigned

20   issues this Amended Order and Findings and Recommendations.  The Order and Findings and

21   Recommendations filed January 10, 2014 (ECF No. 33), is vacated.[1]

22   II.  Introduction

23         Plaintiff is a state prisoner, currently incarcerated at Calipatria State Prison (CSP), who

24   proceeds without counsel and in forma pauperis in this civil rights action filed pursuant to 42

25   U.S.C. § 1983.  This case proceeds on the original complaint, against defendants K.M. Porter, D.

26

27   [1]  Plaintiff did not object to the court's original Order and Findings and Recommendations, or
     respond to defendants' objections.  All parties will be provided an opportunity to object to the
28   instant Order and Findings and Recommendations.

                                                   1

1    Till, S. Norton, and D. Caraballo, each a correctional sergeant at California State Prison-

2    Sacramento (CSP-SAC).

3         Presently pending is defendants' motion to dismiss the following claims:  (1) plaintiff's

4    First Amendment claims against defendants Caraballo, Till and Norton for failure to exhaust

5    administrative remedies; (2) plaintiff's First Amendment claim against defendant Caraballo for

6    failure to state a claim; and (3) plaintiff's Fourteenth Amendment claims against all defendants

7    for failure to state a claim.  Defendants concede that the complaint states a potentially cognizable

8    and administratively exhausted First Amendment claim against defendant Porter.

9         For the reasons that follow, this court recommends that defendants' motion be granted.

10   III.  Defendants' Motion to Strike

11        Plaintiff filed an opposition (ECF No. 24) to defendants' motion to dismiss (ECF No. 20);

12   defendants filed a reply (ECF No. 28).  Within a week of filing his opposition, plaintiff submitted

13   an "Amendment to Opposition" (ECF No. 26), in which he requested that the court consider three

14   new exhibits, and plaintiff's refined legal arguments, together with plaintiff's original opposition.

15   Defendants move to strike plaintiff's Amendment (ECF No. 29); plaintiff filed a response (ECF

16   No. 30).

17        Defendants assert that plaintiff's Amendment should be stricken because filed outside the

18   briefing deadlines set by the court.  Plaintiff responds that his Amendment is better characterized

19   as a "Supplement," because it contains newly acquired evidence that is relevant to the court's

20   decision, and the submission of this evidence demonstrates plaintiff's attempt to provide the most

21   complete record possible.  Moreover, plaintiff argues, defendants do not assert that they have

22   been prejudiced by plaintiff's additional briefing and exhibits.

23        Review of plaintiff's opposition and proposed Amendment, together with their respective

24   exhibits, demonstrates that the court's consideration of both filings are critical to a thorough

25   assessment of the merits of defendants' motion to dismiss, particularly based on failure-to-

26   exhaust grounds.[2]  Although the Local Rules do not provide for the unauthorized submission of

27   _____

28   [2] As set forth in defendants' own notice to plaintiff concerning the requirements for opposing a
     motion to dismiss for failure to exhaust administrative remedies, "[t]he court is authorized to

2

1    an amendment or supplement to an opposition, see generally Local Rule 230(l), the court's

2    consideration of both plaintiff's opposition and Amendment is supported by Ninth Circuit

3    authority concerning the appropriate evaluation of a motion to dismiss for failure to exhaust

4    administrative remedies, see n.1, supra, and good cause grounded in plaintiff's pro se status and

5    belated finding of pertinent documents.

6         Accordingly, defendants' motion to strike plaintiff's Amendment is denied.

7    IV.  The Complaint

8         The complaint alleges that defendants Porter, Till, Norton, and Caraballo, acting in

9    retaliation against plaintiff for assisting another inmate with prison grievances and civil litigation,

10   and/or for challenging these matters in an administrative grievance, each filed, ratified or

11   otherwise endorsed false disciplinary charges against plaintiff, or sought to intimidate plaintiff to

12   withdraw his grievance.

13        The complaint alleges that, while plaintiff was incarcerated at CSP-SAC, in the

14   Correctional Treatment Center (CTC) (also referred to as the "Taj Mahal"), he served as

15   Chairman of the "Men's Advisory Counsel" (sic) (MAC), and was a recognized "Prisoner

16   Laymen" (sic), known for his legal advocacy skills.  Plaintiff alleges that inmate Giraldes, also

17   housed in the CTC, "requested that plaintiff raise the issue of obtaining the Antenna Wall Cable

18   System for the inmates housed in the CTC at a Warden's Meeting, so they could receive regular

19   [programming] over the air channels."  (Complaint, ECF No. 1 at 3.)  When the administrative

20   request to the warden proved unsuccessful, plaintiff assisted Giraldes in filing a related civil

21   action.  Allegedly in retaliation for this advocacy, defendant Porter, a Correctional Sergeant,

22   authored three allegedly false disciplinary "write-ups" against plaintiff.  Plaintiff asserts that "two

23   of the three write-ups resulted in CDC-128A, 'Custodial Counseling Chronos,' which by (CDCR)

24

25   resolve factual disputes against any party based on the evidence submitted by the parties;"
     plaintiff has "the right to present any evidence to show that [he] did exhaust [his] available
26   administrative remedies before coming to federal court;" and if plaintiff fails to submit evidence
     in opposition to defendants' motion to dismiss, his case may be dismissed.  (ECF No. 20 at 2;
27   ECF No. 24 at 2.)  See Woods v. Carey, 684 F.3d 934, 940 n.6 (9th Cir. 2012); Wyatt v. Terhune,
     315 F.3d 1108, 1120 n.14 (9th Cir. 2003); and Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir.
28   1998) (en banc).

1  [California Department of Corrections and Rehabilitation] policy cannot be challenged for the

2  purpose of having them removed from one's file." (Id. at 5.)  The complaint alleges that this

3  action resulted in a loss of plaintiff's privileges, and will prejudice him at his next Parole Board

4  Hearing.

5          The complaint identifies the following two "write-ups," without clearly explaining the

6  third:  (1) Rules Violation Report (RVR) Log No. A-11-07-002 ("Out of Bounds"); and (2) RVR

7  Log No. A-11-08-003 ("Job Performance").   However, the exhibits attached to plaintiff's

8  opposition and Amendment identify the following pertinent disciplinary matters:

9          1.  CDC 128-A (Custodial Chrono) Log No. FA8-208, dated May
        10, 2011:  Prepared by Correctional Sergeant Porter, finding that
10      plaintiff had talked through the back window of his workplace, the
        Canteen, to other inmates, despite having been previously and
11      repeatedly informed that the area is "Out-of-Bounds for loitering."
        (ECF No. 24 at 26.)
12

13          2.  RVR Log No. A-11-07-002 ("Out-of-Bounds"), dated July 11,
        2011:   Prepared by Correctional Sergeant Porter, reporting that
14      plaintiff had again talked through the back window of the Canteen
        to another inmate, despite prior disciplinary action for the same
15      violation, and despite the fact that the area is clearly designated
        "out of bounds."  Porter stated that he "again" spoke with Canteen
16      Manager Harmon of the need to prevent such unauthorized conduct.
        On July 30, 2011, Correctional Sergeant Till found plaintiff
17      "guilty" of the charge.  Plaintiff received a CDC-128A (Counseling
        Chrono) and 5-day loss of weekend yard privileges, without credit
18      forfeiture.  (See ECF No. 24 at 22-3; see also ECF No. 26 at 11-2.)

19          3.  RVR Log No. A-11-08-003 ("Job Performance"), dated August
        8, 2011:  Prepared by Correctional Sergeant Porter, reported that
20      plaintiff had posted an unauthorized sign in the Canteen window
        that read:  "Do not approach or talk to the canteen worker at this
21      window subject to a CDC-115 per Sergeant Porter." (ECF No. 24
        at 24; see also ECF No. 26 at 13.)   Canteen Manager Harmon
22      reportedly stated that plaintiff "does canteen money checks for the
        inmates on the yard out the back window which is a violation of
23      current policy."  (Id.)   Sergeant Porter opined that "Canteen
        Manager Harmon is still allowing Nunez to break the rules of
24      working in A-Facility Canteen," and requested that plaintiff "be
        removed from the position of Canteen Clerk A-Facility . . . due to
25      his constant violation of the rules of his job."  (Id.)  On August 10,
        2011, Correctional Sergeant Norton found plaintiff "guilty" of the
26      charge.  Plaintiff was assessed "10 days loss of evening dayroom
        and telephone privileges," and "10 day loss of weekend yard
27      program," and was referred to the Institutional Classification
        Committee (ICC) for removal from his job assignment.  (ECF No.
28      26 at 13-4.)

4

1

2

          4.  RVR Log No. A-11-08-003 led to Sergeant Porter's completion of another <u>CDC 128-A (Counseling Chrono) Log No. FA8-205, dated August 15, 2011</u>.  (<u>Id.</u> at 27.)

3        The complaint alleges that defendant Till, also a Correctional Sergeant, was the hearing

4  officer assigned to review Porter's write-up against plaintiff for being "Out of Bounds" while

5  working at the canteen (Log No. A-11-07-002).  The complaint alleges that defendants Till and

6  Porter are "friends," and that defendant Till "was often in the company of defendant Porter," and

7  therefore biased against plaintiff.  (ECF No. 1 at 6, 7.)  The complaint alleges that, in response to

8  plaintiff pleading "not guilty" to the charge, Till stated:  "'[A]lthough I know that you are

9  innocent and were at your job assignment, I'm going to find you guilty and make you win on

10  appeal.  This is what you get for backing that asshole Giraldes, and there will more if you keep up

11  your shit and don't wise up. . . .'"  (<u>Id.</u> at 6.)  Plaintiff contends that defendant Till "used his

12  position as the Disciplinary Hearing officer for this write-up to retaliate against plaintiff for him

13  assisting inmate Giraldes as a MAC Member. . . ."  (<u>Id.</u>)  The complaint alleges that this

14  disciplinary action was later dismissed by the Chief Disciplinary Officer because the allegations

15  failed to meet the institutional criteria for "Out of Bounds."  (<u>Id.</u> at n.2.)

16        The complaint further alleges that, on August 10, 2011, defendant Norton, another

17  Correctional Sergeant, and also an alleged friend of Porter, was assigned as the hearing officer to

18  consider plaintiff's disciplinary write-up concerning his "Job Performance" (Log No. A-11-08-

19  003).  The complaint alleges that plaintiff's "supervisor, Ms. Harmon[,] clearly stated to

20  defendant Norton on the day of the hearing that she asked plaintiff to put up the sign that led to

21  the 'Poor Job Performance write-up.'  He [Norton] did not allow her testimony at the hearing.

22  Norton stated, 'I don't care what you have to say, you can't help him. . . .'"  (<u>Id.</u> at 8.)  The

23  complaint alleges that Norton "knowingly found plaintiff guilty for the write-up authored by

24  defendant Porter, even though he was told by plaintiff's civilian work supervisor that she

25  instructed plaintiff to put the sign up."  (<u>Id.</u> at 7.)  The complaint alleges that Norton, like Till, was

26  a friend of Porter, and acted in tandem with the other defendants to retaliate against plaintiff for

27  exercising his First Amendment rights.

28  ////

5

1    The complaint next alleges that plaintiff filed an administrative grievance ("Form 602

2   appeal") asserting that defendants were retaliating against plaintiff for the exercise of his First

3   Amendment rights.  Defendant Caraballo, a Correctional Sergeant, was assigned as the First

4   Level reviewer of the grievance.  Plaintiff alleges that Caraballo commenced the First Level

5   Review on October 6, 2011, in the prison canteen.  However, on October 7, 2011, defendant

6   Caraballo allegedly summoned plaintiff to the CTC, where he asked plaintiff more questions in

7   the presence of defendant Till and another, unnamed, Correctional Sergeant; Till was seated

8   behind plaintiff.  The complaint alleges that Caraballo and Till tried to persuade plaintiff to cancel

9   the grievance, as he had allegedly tried the day before.  When plaintiff refused, Caraballo

10  allegedly asked, "'Who was the Hearing Officer again on the Out of Bounds write-up?'"  Plaintiff

11  was required to identify Till.  Caraballo denied plaintiff's grievance in a written decision issued

12  October 11, 2011.  (ECF No. 1 at 17-8.)  The complaint alleges that Caraballo and Till sought to

13  intimidate plaintiff at the hearing, and that this conduct, together with Caraballo "upholding" the

14  allegedly unsupported "guilty finding" on the Out-of-Bounds charge,[3] were retaliatory acts

15  against plaintiff for using the administrative appeals process.[4]

16    Based on these alleged facts, the complaint alleges in conclusion that "[a]ll defendants

17  violated plaintiff's protected conduct under the Federal Constitutional (sic), which are rights

18  guaranteed to plaintiff [as] a state prisoner under the First and Fourteenth Amendments. . . ."

19  (ECF No. 1 at 10.)  Plaintiff seeks declaratory relief, damages, and costs.

20  V.  <u>Motion to Dismiss Based on Alleged Failure to Exhaust Administrative Remedies</u>

21    Defendants move to dismiss plaintiff First Amendment claims against defendants

22  Caraballo, Till and Norton, on the ground that plaintiff failed to exhaust his available

23  administrative remedies.  Defendants concede that "[p]laintiff exhausted his administrative

24  _____

25  [3] Carabello denied plaintiff's administrative grievance at the First Level, based on the finding that
    Porter had "acted appropriately," without evidence that she had acted in retaliation against

26  plaintiff.  (<u>See</u> ECF No. 24 at 17-8.)

27  [4] The complaint further alleges that, the next day, on October 8, 2011, "they" (referencing Porter
    and/or Till and/or Carabello) further retaliated when they "falsified the reason to remove plaintiff

28  and the MAC Body Members from their MAC Room."  (ECF No. 1 at 7.)

1   remedies against Defendant Porter" on this claim.  (ECF No. 28 at 2.)

2        A.  Legal Standards for Motion Premised on Alleged Failure to Exhaust

3        In the Ninth Circuit, motions to dismiss for failure to exhaust administrative remedies are

4   normally brought, as here, pursuant to an "unenumerated Rule 12(b)" motion, Federal Rules of

5   Civil Procedure.  See Albino v. Baca, 697 F.3d 1023, 1029 (9th Cir. 2012).  Review of an

6   exhaustion motion requires the court to look beyond the pleadings in "a procedure closely

7   analogous to summary judgment."  Wyatt v. Terhune, supra, 315 F.3d at 1119 n.14.  "In deciding

8   a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the

9   pleadings and decide disputed issues of fact."  Id. at 1119.

10       The Prison Litigation Reform Act (PLRA) provides that, "[n]o action shall be brought

11  with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

12  prisoner confined in any jail, prison, or other correctional facility until such administrative

13  remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Pursuant to this rule, prisoners

14  must exhaust their administrative remedies regardless of the relief they seek, i.e., whether

15  injunctive relief or money damages, even though the latter is unavailable pursuant to the

16  administrative grievance process.  Booth v. Churner, 532 U.S. 731, 741 (2001).  Exhaustion

17  requires that the prisoner complete the administrative review process in accordance with all

18  applicable procedural rules, including deadlines.  Woodford v. Ngo, 548 U.S. 81 (2006).

19  However, "a prisoner need not press on to exhaust further levels of review once he has received

20  all 'available' remedies at an intermediate level of review or has been reliably informed by an

21  administrator that no remedies are available."  Brown v. Yaloff, 422 F.3d 926, 935 (9th Cir.

22  2005).

23       The PLRA requires that available administrative remedies be exhausted prior to filing suit.

24  McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).  The exhaustion requirement is not

25  jurisdictional, but an affirmative defense that may be raised by a defendant in a motion to dismiss

26  pursuant to Federal Rule of Civil Procedure 12(b).  See Jones v. Bock, 549 U.S. 199, 216 (2007)

27  ("inmates are not required to specially plead or demonstrate exhaustion in their complaints"); see

28  also Wyatt, 315 F.3d at 1117-19 (failure to exhaust is an affirmative defense).  Defendants bear

1   the burden of raising and proving the absence of exhaustion, and their failure to do so waives the

2   defense.  Id. at 1119.

3        The determination whether a grievance or appeal has been administratively exhausted

4   requires an assessment of the allegations initially set forth therein.  The degree of detail that is

5   required is dictated by the prison's grievance system.  "[T]o properly exhaust administrative

6   remedies prisoners must 'complete the administrative review process in accordance with the

7   applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance

8   process itself.  Compliance with prison grievance procedures, therefore, is all that is required by

9   the PLRA to 'properly exhaust.'  The level of detail necessary in a grievance to comply with the

10  grievance procedures will vary from system to system and claim to claim, but it is the prison's

11  requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Jones, supra,

12  549 U.S. at 218.

13       When a district court concludes that a prisoner has not exhausted his available

14  administrative remedies on a claim, "the proper remedy is dismissal of the claim without

15  prejudice."  Wyatt, 315 F.3d at 1120; see also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir.

16  2005) ("mixed" complaints may proceed on exhausted claims).  Thus, "if a complaint contains

17  both good and bad claims, the court proceeds with the good and leaves the bad."  Jones, 549 U.S.

18  at 221.

19       Prior to 2011, the CDCR grievance procedures required only that the prisoner, in his

20  initial grievance, "describe the problem and action requested."  Former Cal. Code Regs., tit. 15, §

21  3084.1(a) (2009).  This general requirement reflected that "[t]he primary purpose of a grievance

22  is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for

23  litigation."  Griffin v. Arpaio, 557 F. 3d 1117, 1120 (9th Cir. 2009); accord, Johnson v. Johnson,

24  385 F.3d 503, 522 (5th Cir. 2004) ("the primary purpose of a grievance is to alert prison officials

25  to a problem, not to provide personal notice to a particular official that he may be sued; the

26  grievance is not a summons and complaint that initiates adversarial litigation") (cited with

27  approval in Jones, supra, 549 U.S. at 219).  As the Supreme Court found in 2007, "exhaustion is

28  not per se inadequate simply because an individual later sued was not named in the grievances."

8

1   Jones, 549 U.S. at 219.

2          Nevertheless, effective January 28, 2011, the grievance procedures in California prisons

3   were revised to require greater specificity.  See Cal. Code Regs., tit. 15, §§ 3084-3084.8.  Each

4   grievance must be "limited to one issue or related set of issues," id., §3084.2(a)(1), and must

5   specifically identify the correctional official(s) against whom the allegations are made, or provide

6   sufficient information for the appeals coordinator to attempt to make such identification.  The

7   pertinent CDCR regulation provides:

8              The inmate or parolee shall list all staff member(s) involved and
               shall describe their involvement in the issue.  To assist in the
9              identification of staff members, the inmate or parolee shall include
               the staff member's last name, first initial, title or position, if known,
10             and the dates of the staff member's involvement in the issue under
               appeal.  If the inmate or parolee does not have the requested
11             identifying information about the staff member(s), he or she shall
               provide any other available information that would assist the
12             appeals coordinator in making a reasonable attempt to identify the
               staff member(s) in question.
13

14   15 Cal. Code Reg. § 3084.2(a)(3).

15          In addition, CDCR's Department Operations Manual (DOM) provides that no issue or

16   person may be deemed exhausted unless it was specified in the initial grievance and considered at

17   each level of administrative review:

18             Administrative remedies shall not be considered exhausted relative
               to any new issue, information or person later named by the
19             appellant that was not included in the originally submitted CDCR
               Form 602 and addressed through all required levels of
20             administrative review (up to and including the third level, unless the
               third level of review is waived by regulation).
21

22   CDCR DOM § 54100.13.3.

23          These new requirements apply to the grievance filed by plaintiff in the instant case, which

24   was submitted to prison officials on August 31, 2011.

25          B.  Subject Administrative Grievance

26          Defendants have submitted a copy of plaintiff's only pertinent administrative grievance

27   (Log No. SAC-11-00796).  The grievance was considered exhausted at the Second Level of

28   review, as is routine for administrative challenges to Rules Violation Reports.  (See ECF No. 20-1

at 3, 5, 7; <u>see also</u> ECF No. 24 at 11-2.)  Plaintiff made the following allegations in his initial

grievance, designated a "Staff Complaint," and entitled by plaintiff, "Denial of Due Process,

Harassment, Retaliation, False Charges" (ECF No. 20-2 at 6-7; ECF No. 24 at 13, 15):

> On June 11, 2011, I was falsely charged with a CCR Title 15 Rules Violation by Correctional Sergeant K.M. Porter.  As a form of harassment this same sergeant again wrote this appellant up for violating CCR Title 15 Rules.  This was the third time this sergeant made the decision to act in a retaliatory manner towards this appellant, causing him to lose privileges even though the charged offenses were dismissed and/or cleared of being a rules violation.  Moreover, as a life prisoner, these charges will surely affect his possible chances at parole.  Sergeant Porter had clear knowledge that I was "not" out-of-bounds when she charged me with being out of bounds.  Because I have a relationship with inmate Giraldes she has chosen to retaliate towards me because he exercises his right to litigate against her assigned work area (CTC).  I have two guilty findings now in my record (although dismissed and lowered to 128) due to two impatial (sic) decisionmakers (friends) of this sergeant.  Sergeant K. M. Porter's actions have violated my federal constitutional rights to:  Due Process of law, First (1st) Amendment, and 8th Amendment protections.  It is very clear that the "BBT" uses 128 chronos against lifers.

Plaintiff requested that Sergeant Porter "be reprimanded" and "re-trained," and that plaintiff be

awarded damages.

Defendant Caraballo summarily denied the grievance at the First Level, noting that the

hiring authority had also reviewed the grievance and determined that it was not a "staff

complaint." (ECF No. 20-2 at 6.)  Plaintiff requested further review (in Part D of the appeal), on

the following grounds (ECF No. 20-2 at 8-9; ECF No. 24 at 14, 16):

> The First Level Response fails to address the appeal issues.  Sgt. Porter and Sgt. Till conspired to draft fraudulent and factually impossible reports circumventing RVR processing mandates to do so, and arranged for a hearing to be had where a "false" finding of guilt could be assured.  This is all due to my advocating (as a MAC member) on behalf of inmate Giraldes, who is housed in the CTC, and who Sgt. Porter and Sgt. Till tried to have assaulted.   The advocating turned their rights (sic) towards me, and false retaliatory charges ensued.  Inmates have the right to appeal an action and assist others in their appeals, and [it] is a guaranteed right that these sergeants are attempting to chill.  All reports written by Sgt. Porter claim impossible scenarios, and are driven by my refusal to get Giraldes to withdraw his appeals against her and when I refused to withdraw the instant appeal, she and Sgt. Till immediately ordered I loose (sic) access to the assigned MAC office.  Failure to address the actual issues in this appeal only proves the point to be made in the civil suit I am filing after exhaustion.  The First Level reviewer,

> Sgt. Caraballo's intimidation tactic of calling me to Taj Mahal so he could seat me with Sgt. Till seated behind me asking me, "If I know who the hearing sergeants were?" and if I know who the staff are that involved in the false RVR situation, is a perfect example of the threats of reprisal, both implied and implemented. These staff use to get inmates to withdrawal their appeals. The reviewer left all issues unaddressed, and rewrote the appeal without making any actual findings. This is only beneficial as long as staff are hidden behind CSP-SAC walls. Please exhaust so we can get outside the walls where rational decision makers can decide if this conduct should go unpunished. The First Level Reviewer, Sgt. Caraballo, spent more time trying to convince me to withdraw the appeal than taking down my statement on my appeal issues, with Sgt. Till seated behind me in Taj Mahal.

Attached to the grievance were copies of plaintiff's RVRs, Log Nos. A-11-07-002, and A-11-08-003, and plaintiff's CDC 128-A, dated May 10, 2011.

Pursuant to the Second Level Review (SLR), CSP-SAC Warden T. Virga denied the grievance, finding in pertinent part (ECF No. 20-1 at 9-10):

> The SLR finds that the appellant was afforded a fair and impartial RVR hearing, by an unbiased Senior Hearing Officer (SHO). The SLR notes that the appellant was present at the RVR hearing and had entered a plea of not guilty. The appellant was allowed to testify on his own behalf.

> The SLR notes that the appellant is not appealing the RVR, but is appealing that the RVRs were issued as a form of retaliation.

> . . . The appellant has offered no proof that he is/was retaliated against.

> . . . Regarding the appellant's claim that Sergeant K. Porter falsely charged him with two RVRs and a CDC 128-A as a form of retaliation for being friends with inmate Girades, the appellant has offered no proof, nor has he submitted any evidence to substantiate his claims.

> Regarding the appellant's claim that Sergeant Porter's actions have violated his 1st and 8th Amendment protections, the appellant has offered no proof, nor has he submitted any evidence to substantiate his claims.

> . . . . The appellant's request that Sergeant Porter be reprimanded and retrained is beyond the scope of the Department's appeal process.

Plaintiff sought to challenge the Second Level decision, based on the following allegations (ECF No. 20-2 at 8):

> This appellant re-submits this appeal to fully exhaust his CDCR appeal remedies based upon the fact that CDCR Sergeant K. Porter violated his constitutional rights as stated throughout this appeal process. She purposely and without provocation charged me with RVR reports solely to retaliate against me for reasons stated.

However, plaintiff's grievance was deemed exhausted at the Second Level. (See ECF No. 20-1 at 7.)

C. Analysis

Defendants contend that plaintiff "never submitted an administrative appeal regarding the alleged incidents involving Defendants Caraballo, Norton, and Till." (ECF No. 20 at 7.) While defendants concede that plaintiff alleged misconduct by defendants Till and Caraballo in Part D of the grievance (when plaintiff requested Second Level review), defendants assert that these allegations cannot be construed as part of the grievance because not originally set forth therein. (ECF No. 20 at 7 (citing Cal. Code Regs., tit. 15, §§ 3084.2(a)(1)-(3)).

Defendants' argument is well taken. While plaintiff's initial grievance, considered in tandem with the challenged disciplinary findings and the allegations in plaintiff's complaint, may reasonably be construed to challenge the conduct of defendants Norton, Till and Caraballo, as well as defendant Porter, CDCR regulations require a more strident assessment. As initially framed, plaintiff's grievance named only defendant Porter as the correctional officer who allegedly retaliated against plaintiff for providing litigation assistance to inmate Giraldes, by charging plaintiff, for the third time, with an allegedly false rule violation. Although the grievance asserted that plaintiff had been found guilty of two prior allegedly false disciplinary charges, by defendant Porter's "two . . . friends" (identified in the complaint as defendants Till and Norton), the remedy sought by the grievance was directed only at defendant Porter, viz: "(1) That Sgt. Porter be reprimanded, (2) Re-trained, and (3) That I be awarded both monetary and punitive damages for her deliberate and indifferent actions." (ECF No. 20-2 at 6.) Consistently, the grievance alleged only that "Sergeant K.M. Porter's actions have violated my federal constitutional rights . . . ." (Id. at 7.)

In responding to the denial of his grievance at the First Level, plaintiff added allegations that Porter conspired with Till to make false and retaliatory disciplinary charges against plaintiff,

1   and that Caraballo and Till sought to intimidate plaintiff pursuant to the First Level Review.

2   Nevertheless, plaintiff maintained that "[a]ll reports written by Sgt. Porter claim impossible

3   scenarios, and are driven by my refusal to get Giraldes to withdraw his appeals against her . . . ."

4   (ECF No. 20-2 at 9.)

5          As defendants emphasize, plaintiff did not identify defendant Norton at any stage of the

6   administrative proceedings, but rather did so in the first instance in his complaint filed in this

7   court.  Although plaintiff referenced Porter's "two friends" (later identified as Norton and Till) in

8   his initial grievance, he sought no remedy against them.  Plaintiff's allegations against defendant

9   Caraballo arose pursuant to Caraballo's alleged conduct during the First Level Review, clearly

10  after plaintiff initially submitted his grievance.  Similarly, plaintiff did not name defendant Till

11  until he sought Second Level Review.

12         For these reasons, the court finds that plaintiff administratively exhausted his claims

13  against only defendant Porter.  Plaintiff's initial grievance was expressly limited to his claims

14  against defendant Porter, see Cal. Code Regs., tit. 15, §§ 3084.2(a)(1), (3), and the administrative

15  review of that grievance focused only on the challenged conduct of Porter, see CDCR DOM §

16  54100.13.3.

17         Therefore, the undersigned recommends that defendants' motion to dismiss plaintiff's

18  First Amendment claims against defendants Carballo, Till, and Norton should be granted because

19  not administratively exhausted.

20  V.  Motion to Dismiss Based on Alleged Failure to State a Claim

21         Due to the recommended dismissal of plaintiff's First Amendment claims against

22  defendants Caraballo, Till and Norton, the court need not reach defendants' motion to dismiss

23  plaintiff's First Amendment claim against Caraballo for failure to state a claim.  Defendants

24  concede that plaintiff states a First Amendment claim against remaining defendant Porter.[5]  The

25  ─────────────
    [5]  Plaintiff's factual allegations, as set forth in his administrative grievance and this action,
26  include each of the five basis elements required to state a viable First Amendment retaliation
    claim within the prison context:  "(1) An assertion that a state actor took some adverse action
27  against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)
    chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably
28  advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir.

1    only remaining matter is defendants' motion to dismiss plaintiff's Fourteenth Amendment claims

2    against all defendants.

3              A.  Legal Standards for Motion Premised on Alleged Failure to State a Claim

4              A motion to dismiss, for failure to state a claim, is brought pursuant to Rule 12(b)(6),

5    Federal Rules of Civil Procedures, which authorizes motions to dismiss for "failure to state a

6    claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In considering a motion to

7    dismiss pursuant to Rule 12(b)(6), the court must accept as true the allegations of the complaint in

8    question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most

9    favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  In order to survive

10   dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation

11   of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right

12   to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007).

13   However, "[s]pecific facts are not necessary; the statement [of facts] need only give the defendant

14   fair notice of what the ... claim is and the grounds upon which it rests." Erickson, 551 U.S.89,

15   (quoting Bell Atlantic, 550 U.S. at 554) (internal citation and quotation marks omitted).

16             B.  Legal Standards for Fourteenth Amendment Due Process Claim

17             The Due Process Clause protects prisoners from being deprived of liberty without due

18   process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of

19   action for deprivation of due process, a plaintiff must first establish the existence of a liberty

20   interest for which the protection is sought. "States may under certain circumstances create liberty

21   interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-

22   84 (1995). Liberty interests created by state law are generally limited to freedom from restraint

23   which "imposes atypical and significant hardship on the inmate in relation to the ordinary

24   incidents of prison life." Sandin, 515 U.S. at 484.  "Prison disciplinary proceedings are not part

25

26   2005) (fn. and citations omitted).  Direct and tangible harm will support a First Amendment
     retaliation claim even without demonstration of a chilling effect on the further exercise of a

27   prisoner's First Amendment rights.  Id. at 568 n.11.  Plaintiff alleges that defendant Porter filed
     false disciplinary charges against plaintiff because he advocated on behalf of a fellow inmate,

28   resulting in a direct harm to plaintiff that did not advance a legitimate correctional goal.

1   of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does

2   not apply." <u>Wolff,</u> 418 U.S. at 556.  Rather, the minimum procedural requirements that must be

3   met in a prison disciplinary proceedings are as follows:  (1) written notice of the charges; (2) at

4   least 24 hours between the time the prisoner receives written notice and the time of the hearing,

5   so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the

6   evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to

7   call witnesses and present documentary evidence in his defense, when permitting him to do so

8   would not be unduly hazardous to institutional safety or correctional goals; and (5) legal

9   assistance to the prisoner where the prisoner is illiterate or the issues presented are legally

10  complex.  <u>Id</u>. at 563-71. As long as the five minimum <u>Wolff</u> requirements are met, due process

11  has been satisfied.  <u>Walker v. Sumner</u>, 14 F.3d 1415, 1420 (9th Cir. 1994).

12          C.  <u>Analysis</u>

13          Plaintiff alleges that his loss of privileges, as a result of receiving two CDC-128A

14  Counseling Chronos, "resulted in plaintiff losing privileges that are protected under the Due

15  Process Clause of the Federal Constitution, i.e. loss of yard privileges." (ECF No. 1 at 5.)  In

16  opposition to the pending motion, plaintiff explains that this due process claim is based on his

17  anticipated loss of liberty should the Parole Board, at plaintiff's next parole hearing, deny

18  plaintiff parole due to those disciplinary findings.  Plaintiff has submitted a copy of his January 5,

19  2010 parole denial which recommends, in anticipation of plaintiff's next parole hearing in 2017,

20  that he "stay disciplinary free," receive "no more 115's or 128A's," and "earn positive chronos."

21  (ECF No. 26 at 16-7.)

22          There is no authority to find that the Parole Board's anticipated reliance on the subject

23  disciplinary findings states a due process claim.  Moreover, plaintiff does not claim, and the

24  record does not support a finding, that the subject disciplinary hearings failed to satisfy the

25  minimum requirements identified in <u>Wolff</u>.  Additionally, plaintiff does not (and cannot) pursue a

26  civil rights damages claim based on an allegedly false disciplinary finding that remains in effect.

27  ////

28  ////

15

1  Heck v. Humphrey, 512 U.S. 477 (1994).[6]  While plaintiff asserts in a footnote that the

2  disciplinary action on his Out-of-Bounds charge "was eventually dismissed and voided . . . by the

3  Chief Disciplinary Officer" (ECF No. 1 at 6 n.2), plaintiff has submitted no evidence to support

4  this assertion, and the matter was not administratively exhausted by the subject grievance.

5         For these reasons, the court finds that defendants' motion to dismiss plaintiff's Fourteenth

6  Amendment claims should be granted.  As a result, all defendants except Porter should be

7  dismissed from this action, which should proceed only on plaintiff's First Amendment retaliation

8  claim against defendant Porter.

9  VI.  Conclusion

10        For the foregoing reasons, IT IS HEREBY ORDERED that:

11        1.  The Order and Findings and Recommendations filed January 10, 2014 (ECF No. 33), is

12  vacated.

13        2.  Defendants' motion (ECF No. 29) to strike plaintiff's Amendment is denied.

14        Further, IT IS HEREBY RECOMMENDED that:

15        1. Defendants' motion to dismiss (ECF No. 20), should be granted.

16        2.  Defendants Till, Norton and Caraballo should be dismissed from this action.

17        3.  This action should proceed only on plaintiff's First Amendment retaliation claim

18  against defendant Porter.

19        These findings and recommendations are submitted to the United States District Judge

20  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

21  after being served with these findings and recommendations, petitioner any party may file written

22  _____

23  [6]  "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or
for other harm caused by actions whose unlawfulness would render a conviction or sentence
invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct
24  appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such
determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28
25  U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has
not been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks
26  damages in a § 1983 suit, the district court must consider whether a judgment in favor of the
plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the
27  complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence
has already been invalidated."  Heck v. Humphrey, 512 U.S. at 486-87 (fn. omitted).
28

1  objections with the court and serve a copy on all parties.  Such a document should be captioned

2  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

3  objections shall be filed and served within fourteen days after service of the objections.  The

4  parties are advised that failure to file objections within the specified time may waive the right to

5  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

6  Dated:  March 26, 2014

7

8  /nune2775.mtd.amd

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

17