1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CURTIS NUNEZ, JR.,                        No.  2:12-cv-2775 JAM KJN P

12                  Plaintiff,

13          v.                                 FINDINGS AND RECOMMENDATIONS

14   K.M. PORTER, et al.,

15                  Defendants.

16

17          Plaintiff is a state prisoner, currently incarcerated at Calipatria State Prison.  Plaintiff

18   proceeds, in forma pauperis and without counsel, in this civil rights action filed pursuant to 42

19   U.S.C. § 1983.  The action proceeds on plaintiff's initial complaint, in which he claims that

20   defendants retaliated against him for undertaking activity protected under the First Amendment.

21   Presently before the court is defendants' motion for summary judgment, asserting that plaintiff

22   failed to exhaust administrative remedies as to his retaliation claims against three of the four

23   named defendants.  For the reasons set forth below, the undersigned recommends that the motion

24   for summary judgment be granted.

25   ////

26   ////

27   ////

28   ////

1

I. Background

    A. Factual Background

       Plaintiff sues defendants K.M. Porter, D. Till, S. Norton, and D. Caraballo,[1] each a Correctional Sergeant at California State Prison-Sacramento ("CSP-SAC").  (ECF No. 1.)

       The operative complaint alleges that while plaintiff was incarcerated at CSP-SAC, in the Correctional Treatment Center ("CTC," also referred to as the "Taj Mahal"), plaintiff served as Chairman of the "Men's Advisory Counsel" (sic) ("MAC"), and was a recognized "Prisoner Laymen" [sic], known for his legal advocacy skills.  (Complaint, ECF No. 1 at 3-4.)  Plaintiff alleges that inmate Giraldes, also housed in the CTC, "requested that plaintiff raise the issue of obtaining the Antenna Wall Cable System for the inmates housed in the CTC at a Warden's Meeting, so they could receive regular over the air channels."  (Id. at 3.)  When the administrative request to the warden proved unsuccessful, plaintiff assisted Giraldes in filing a related civil action.  Allegedly in retaliation for this advocacy, defendant Porter, a Correctional Sergeant, authored three allegedly false disciplinary "write-ups" against plaintiff.  (Id. at 4.)  Plaintiff asserts that "two of the three write-ups resulted in CDC-128A, 'Custodial Counseling Chronos,' which by [California Department of Corrections and Rehabilitation] policy cannot be challenged for the purpose of having them removed from one's file."  (Id. at 5.)  According to the complaint, this action resulted in a loss of plaintiff's privileges, and will prejudice him at his next Parole Board Hearing.  (Id.)

       The complaint identifies two "write-ups," without clearly explaining the third:  (1) Rules Violation Report ("RVR") Log No. A-11-07-002 ("Out of Bounds RVR"); and (2) RVR Log No. A-11-08-003 ("Job Performance RVR").  (Id. at 4.)  However, documents previously filed by plaintiff in this action identify the following matters:

       1. CDC 128-A (Custodial Chrono) Log No. FA8-208, dated May 10, 2011:  Prepared by Correctional Sergeant Porter, finding that plaintiff had talked through the back window of his workplace, the Canteen, to other inmates, despite having been previously and

---

[1] Defendant Caraballo's name is spelled as "Carabello" in the operative complaint.  As the motions filed on his behalf in this action refer to him as "Caraballo," the court will use the latter spelling herein.

repeatedly informed that the area is "Out-of-Bounds for loitering."
(ECF No. 24 at 26.)

2.  RVR Log No. A-11-07-002 ("Out of Bounds"), dated July 11,
2011:  Prepared by Correctional Sergeant Porter, reporting that
plaintiff had again talked through the back window of the Canteen
to another inmate, despite prior disciplinary action for the same
violation, and despite the fact that the area is clearly designated
"out of bounds."  Porter stated that he "again" spoke with Canteen
Manager Harmon of the need to prevent such unauthorized conduct.
On July 30, 2011, Correctional Sergeant Till found plaintiff
"guilty" of the charge.  Plaintiff received a CDC-128A (Counseling
Chrono) and 5-day loss of weekend yard privileges, without credit
forfeiture.  (See ECF No. 24 at 22-23; see also ECF No. 26 at 11-
12.)

3.  RVR Log No. A-11-08-003 ("Job Performance"), dated August
8, 2011:  Prepared by Correctional Sergeant Porter, reported that
plaintiff had posted an unauthorized sign in the Canteen window
that read:  "Do not approach or talk to the canteen worker at this
window subject to a CDC-115 per Sergeant Porter." (ECF No. 24
at 24; see also ECF No. 26 at 13.)  Canteen Manager Harmon
reportedly stated that plaintiff "does canteen money checks for the
inmates on the yard out the back window which is a violation of
current policy." (Id.)  Sergeant Porter opined that "Canteen
Manager Harmon is still allowing Nunez to break the rules of
working in A-Facility Canteen," and requested that plaintiff "be
removed from the position of Canteen Clerk A-Facility . . . due to
his constant violation of the rules of his job." (Id.) On August 10,
2011, Correctional Sergeant Norton found plaintiff "guilty" of the
charge.  Plaintiff was assessed "10 days loss of evening dayroom
and telephone privileges," and "10 day loss of weekend yard
program," and was referred to the Institutional Classification
Committee (ICC) for removal from his job assignment.  (ECF No.
26 at 13-14.)

4.  RVR Log No. A-11-08-003 led to Sergeant Porter's completion
of another CDC 128-A (Counseling Chrono) Log No. FA8-205,
dated August 15, 2011.  (ECF No. 24 at 27.)

The complaint alleges that defendant Till, also a Correctional Sergeant, was the hearing

officer assigned to review the Out of Bounds RVR.  The complaint alleges that defendants Till

and Porter are "friends," and that defendant Till "was often in the company of defendant Porter,"

and therefore biased against plaintiff.  (ECF No. 1 at 6, 7.)  The complaint alleges that, in

response to plaintiff pleading "not guilty" to the charge, Till stated:  "'[A]lthough I know that you

are innocent and were at your job assignment, I'm going to find you guilty and make you win on

appeal.  This is what you get for backing that asshole Giraldes, and there will more if you keep up

your shit and don't wise up. . . .'"  (Id. at 6.)  Plaintiff contends that defendant Till "used his

3

1    position as the Disciplinary Hearing officer for this write-up to retaliate against plaintiff for him

2    assisting inmate Giraldes as a MAC Member. . . ." (<u>Id.</u>)  The complaint alleges that this

3    disciplinary action was later dismissed by the Chief Disciplinary Officer because the allegations

4    failed to meet the institutional criteria for being "Out of Bounds." (<u>Id.</u> at 6 n.2.)

5        The complaint further alleges that, on August 10, 2011, defendant Norton, another

6    Correctional Sergeant, and also an alleged friend of Porter, was assigned as the hearing officer to

7    consider plaintiff's disciplinary write-up concerning the Job Performance RVR.  The complaint

8    alleges that plaintiff's "supervisor, Ms. Harmon[,] clearly stated to defendant Norton on the day

9    of the hearing that she asked plaintiff to put up the sign that led to the 'Poor Job Performance

10   write-up.'  He [Norton] did not allow her testimony at the hearing.  Norton stated, 'I don't care

11   what you have to say, you can't help him. . . .'" (<u>Id.</u> at 8.)  The complaint alleges that Norton

12   "knowingly found plaintiff guilty for the write-up authored by defendant Porter, even though he

13   was told by plaintiff's civilian work supervisor that she instructed plaintiff to put the sign up."

14   (<u>Id.</u> at 7.)  The complaint alleges that Norton, like Till, was a friend of Porter, and acted in tandem

15   with the other defendants to retaliate against plaintiff for exercising his First Amendment rights.

16       The complaint next alleges that plaintiff filed an administrative grievance asserting that

17   defendants were retaliating against plaintiff for the exercise of his First Amendment rights.

18   Defendant Caraballo, a Correctional Sergeant, was assigned as the first level reviewer of the

19   grievance.  Plaintiff alleges that Caraballo commenced the first level review on October 6, 2011,

20   in the prison canteen.  (<u>Id.</u> at 9.)  On October 7, 2011, defendant Caraballo allegedly summoned

21   plaintiff to the CTC, where he asked plaintiff more questions in the presence of defendant Till and

22   another unnamed Correctional Sergeant; Till was seated behind plaintiff.  (<u>Id.</u>)  The complaint

23   alleges that Caraballo and Till tried to persuade plaintiff to cancel the grievance, as Caraballo had

24   allegedly tried to convince plaintiff the day before.  When plaintiff refused, Caraballo allegedly

25   asked, "Who was the Hearing Officer again on the Out of Bounds write-up?"  Plaintiff was

26   required to identify Till.  Caraballo denied plaintiff's grievance in a written decision issued

27   October 11, 2011.  (<u>Id.</u>)  The complaint alleges that Caraballo and Till sought to intimidate

28   plaintiff at the hearing, and that this conduct, together with Caraballo "upholding" the allegedly

1  unsupported "guilty finding" on the Out of Bounds RVR charge, were retaliatory acts against

2  plaintiff for using the administrative appeals process.[2]  (Id.)

3        B.  Procedural History

4        In the operative complaint, plaintiff initially pled claims under the First and Fourteenth

5  Amendments.

6        On March 26, 2014, the court filed an order and findings and recommendations addressing

7  defendants' initial motion to dismiss.  (ECF No. 36.)  The court recommended therein that

8  defendants Till, Norton, and Caraballo be dismissed from the action due to plaintiff's failure to

9  exhaust administrative remedies with respect to his First Amendment claims against them.  (Id. at

10  13.)  The court also recommended that plaintiff's Fourteenth Amendment claims be dismissed as

11  to all defendants for failure to state a claim.  (Id. at 16.)

12        Shortly thereafter, on April 7, 2014, the Ninth Circuit issued Albino v. Baca, 747 F.3d

13  1162 (9th Cir. 2014) (en banc), holding that challenges to a prisoner's claims based on a failure to

14  exhaust administrative remedies could no longer be raised by an "unenumerated Rule 12(b)

15  motion."  Instead, "[i]n the rare event that a failure to exhaust is clear on the face of the

16  complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Id. at 1166.  Otherwise, the

17  proper vehicle for raising the exhaustion defense is a motion for summary judgment under Rule

18  56.  Consequently, by order dated April 18, 2014, the undersigned withdrew the findings and

19  recommendations filed on March 26, 2014, denied defendants' motion to dismiss for failure to

20  exhaust administrative remedies, and granted defendants leave to file a motion for summary

21  judgment in which they could again raise the exhaustion defense.  (ECF No. 39.)  On May 23,

22  2014, the undersigned issued an order clarifying that the March 26, 2014 findings and

23  recommendations had been vacated in their entirety.  (ECF No. 42.)

24        On June 5, 2014, defendants filed a renewed motion to dismiss plaintiff's Fourteenth

25  Amendment claims as to all defendants for failure to state a claim.  (ECF No. 44.)   Two weeks

26

27  [2] The complaint further alleges that the next day, on October 8, 2011, "they" (referencing Porter
and/or Till and/or Caraballo) further retaliated when they "falsified the reason to remove plaintiff
28  and the MAC Body Members from their MAC Room."  (ECF No. 1 at 7.)

earlier, defendants Till, Norton, and Caraballo had filed a motion for summary judgment contending that plaintiff had failed to exhaust administrative remedies with respect to his First Amendment claims against them.  (ECF No. 40.)  However, defendants committed a procedural error by failing to file and serve a separate statement of undisputed facts in support of their motion for summary judgment, despite repeatedly referencing such a statement in their points and authorities.  Accordingly, the court issued findings and recommendations recommending that defendants' motion to dismiss plaintiff's Fourteenth Amendment claims be granted and ordering that the motion for summary judgment be denied without prejudice to its re-filing within 14 days.  (ECF No. 52.)  On March 23, 2015, the assigned district judge adopted these findings and recommendations in their entirety.

On February 24, 2015, defendants Caraballo, Till and Norton filed a renewed motion for summary judgment, based on plaintiff's failure to exhaust available administrative remedies as to his First Amendment claims against them,[3] and supported by a separate statement of undisputed facts.  (ECF No. 53.)  Plaintiff filed an opposition (ECF No. 59), and defendants filed a reply (ECF No.60).

II.  Standards

A.  Legal Standard for Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other

_____

[3] Defendants concede that plaintiff exhausted his First Amendment claim against defendant Porter.  (ECF No. 53 at 1 n.1.)

6

1    critical procedural rules[.]"  Woodford v. Ngo, 548 U.S. 81, 90 (2006).  The Supreme Court has

2    also cautioned against reading futility or other exceptions into the statutory exhaustion

3    requirement.  See Booth, 532 U.S. at 741 n.6.  Moreover, because proper exhaustion is necessary,

4    a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise

5    procedurally defective administrative grievance or appeal.  See Woodford, 548 U.S. at 90-93.

6    "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative

7    review process in accordance with the applicable procedural rules,' [] – rules that are defined not

8    by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218

9    (2007) (quoting Woodford, 548 U.S. at 88).  See also Marella v. Terhune, 568 F.3d 1024, 1027

10   (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper

11   exhaustion.'") (quoting Jones, 549 U.S. at 218).

12        In California, prisoners may appeal "any policy, decision, action, condition, or omission

13   by the department or its staff that the inmate or parolee can demonstrate as having a material

14   adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).

15   On January 28, 2011, California prison regulations governing inmate grievances were revised.

16   See Cal. Code Regs. tit. 15, §§ 3084-3084.8.[4]  Now, inmates in California proceed through three

17   levels of appeal to exhaust the appeal process:  (1) a first level formal written appeal on a CDC

18   602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third

19   level appeal to the Director of the California Department of Corrections and Rehabilitation

20   ("CDCR").  Id. § 3084.7.  Under specific circumstances, the first level review may be bypassed.

21   Id.  The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a

22   prisoner's administrative remedies.  See id. § 3084.7(d)(3).  A California prisoner is required to

23   submit an inmate appeal at the appropriate level and proceed to the highest level of review

24   available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293

25   F.3d 1096, 1098 (9th Cir. 2002).

26   ////

27   

28   _____
     [4] These new requirements apply to the grievance filed by plaintiff in the instant case, which was
     submitted to prison officials on August 31, 2011.

Since the 2011 revision, each grievance must be "limited to one issue or related set of issues," Cal. Code Regs. tit. 15, §3084.2(a)(1), and must specifically identify the correctional official(s) against whom the allegations are made, or provide sufficient information for the appeals coordinator to attempt to make such identification.  The pertinent CDCR regulation provides:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue.  To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.  If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

15 Cal. Code Reg. § 3084.2(a)(3).

In addition, CDCR's Department Operations Manual ("DOM") provides that no issue or person may be deemed exhausted unless it was specified in the initial grievance and considered at each level of administrative review:

> Administrative remedies shall not be considered exhausted relative to any new issue, information or person later named by the appellant that was not included in the originally submitted CDCR Form 602 and addressed through all required levels of administrative review (up to and including the third level, unless the third level of review is waived by regulation).

CDCR DOM § 54100.13.3.

An inmate now has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones, 549 U.S. at 204, 216.  In Albino, the Ninth Circuit agreed with the underlying panel's decision[5]

---

[5]  See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012).  The three judge panel noted that "[a] defendant's burden of establishing an inmate's failure to exhaust is very low." Id. at 1031. Relevant evidence includes statutes, regulations, and other official directives that explain the scope of the administrative review process. Id. at 1032.

1    "that the burdens outlined in Hilao [v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996),]

2    should provide the template for the burdens here."  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir.

3    2014) (en banc).  A defendant need only show "that there was an available administrative remedy,

4    and that the prisoner did not exhaust that available remedy."  Albino, 747 F.3d at 1172.  Once the

5    defense meets its burden, the burden shifts to the plaintiff to show that the administrative

6    remedies were unavailable.  Id.

7       A prisoner may be excused from complying with the PLRA's exhaustion requirement if

8    he establishes that the existing administrative remedies were effectively unavailable to him.  Id. at

9    1172-73.  When an inmate's administrative grievance is improperly rejected on procedural

10    grounds, exhaustion may be excused as effectively unavailable.  Sapp v. Kimbrell, 623 F.3d 813,

11    823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010) (warden's

12    mistake rendered prisoner's administrative remedies "effectively unavailable"); Brown v. Valoff,

13    422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal

14    granted at second level and no further relief was available).

15       Where a prison system's grievance procedures do not specify the requisite level of detail

16    for inmate appeals, Sapp, 623 F.3d at 824, a grievance satisfies the administrative exhaustion

17    requirement if it "alerts the prison to the nature of the wrong for which redress is sought."  Griffin

18    v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  "A grievance need not include legal terminology

19    or legal theories unless they are in some way needed to provide notice of the harm being grieved.

20    A grievance also need not contain every fact necessary to prove each element of an eventual legal

21    claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its

22    resolution, not to lay groundwork for litigation."  Griffin, 557 F.3d at 1120.

23       If under the Rule 56 summary judgment standard, the court concludes that plaintiff has

24    failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.

25    Wyatt v. Terhune, 315 F.3d 1108, 1120, overruled on other grounds by Albino, 747 F.3d 1162.

26       B.  Legal Standard for Summary Judgment

27       Summary judgment is appropriate when it is demonstrated that the standard set forth in

28    Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

1    movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

2    judgment as a matter of law." Fed. R. Civ. P. 56(a).

3                    Under summary judgment practice, the moving party always bears
                     the initial responsibility of informing the district court of the basis
4                    for its motion, and identifying those portions of "the pleadings,
                     depositions, answers to interrogatories, and admissions on file,
5                    together with the affidavits, if any," which it believes demonstrate
                     the absence of a genuine issue of material fact.
6

7    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

8    56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

9    only prove that there is an absence of evidence to support the non-moving party's case." Nursing

10   Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

11   387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

12   committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

13   burden of production may rely on a showing that a party who does have the trial burden cannot

14   produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

15   should be entered, after adequate time for discovery and upon motion, against a party who fails to

16   make a showing sufficient to establish the existence of an element essential to that party's case,

17   and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

18   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

19   necessarily renders all other facts immaterial."  Id. at 323.

20           Consequently, if the moving party meets its initial responsibility, the burden then shifts to

21   the opposing party to establish that a genuine issue as to any material fact actually exists.  See

22   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

23   establish the existence of such a factual dispute, the opposing party may not rely upon the

24   allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

25   form of affidavits, and/or admissible discovery material in support of its contention that such a

26   dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

27   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

28   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

                                              10

(1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on February 24, 2015 (ECF No. 53-1), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

III.  Facts

     A.  Undisputed Facts

     For purposes of the instant motion for summary judgment, the court finds the following facts undisputed:[6]

     1.  At all times pertinent to this action, plaintiff was a state prisoner in the custody of CDCR and incarcerated at CSP-SAC.  (Defendants' Statement of Undisputed Facts ("DSUF") 1, ECF No. 53-2.)

     2.  On August 31, 2011, plaintiff filed an administrative grievance, log number SAC-A-1100796.  (DSUF 3.)

     3.  Grievance log no. SAC-A-1100796 was the only administrative appeal that plaintiff filed between January 2011 and December 2012.  (DSUF 2.)

     4.  Grievance log no. SAC-A-1100796 did not mention defendants Caraballo, Norton, or Till by name.  (R. Jibson Decl. Ex. B, ECF No. 53-3 at 6-9.)

     5.  Grievance log no. SAC-A-1100796 was considered exhausted at the second level of Review.  (DSUF 5.)

     B.  Subject Administrative Grievances

     Defendants have submitted a copy of plaintiff's only pertinent administrative grievance, log no. SAC-11-00796.  (ECF No. 53-3 at 6-9.)  Plaintiff has supplemented the grievance with two Rules Violation Reports, Log No. A-11-07-002 ("Out of Bounds RVR"), dated July 11, 2011 (ECF No. 59 at 17-18) and Log No. A-11-08-003 ("Job Performance RVR"), dated August 8, 2011 (id. at 19-20), which he claims that he attached as exhibits to his grievance before submitting it to the first level of review.  Defendants do not dispute plaintiff's claim.

     Plaintiff's grievance was considered exhausted at the second level of review.  Plaintiff made the following allegations in his initial grievance, designated a "Staff Complaint," and entitled by plaintiff, "Denial of Due Process, Harassment, Retaliation, False Charges":

////

---

[6]  Documents submitted as exhibits are considered to the extent they are relevant, even if they are not authenticated, because such documents could be admissible at trial if authenticated.

On June 11, 2011, I was falsely charged with a CCR Title 15 Rules Violation by Correctional Sergeant K.M. Porter.  As a form of harassment this same sergeant again wrote this appellant up for violating CCR Title 15 Rules.  This was the third time this sergeant made the decision to act in a retaliatory manner towards this appellant, causing him to lose privileges even though the charged offenses were dismissed and/or cleared of being a rules violation. Moreover, as a life prisoner, these charges will surely affect his possible chances at parole.  Sergeant Porter had clear knowledge that I was "not" out-of-bounds when she charged me with being out of bounds.  Because I have a relationship with inmate Giraldes she has chosen to retaliate towards me because he exercises his right to litigate against her assigned work area (CTC).  I have two guilty findings now in my record (although dismissed and lowered to 128) due to two impatial (sic) decisionmakers (friends) of this sergeant. Sergeant K. M. Porter's actions have violated my federal constitutional rights to:  Due Process of law, First (1st) Amendment, and 8th Amendment protections.  It is very clear that the "BBT" uses 128 chronos against lifers.

(ECF No. 53-3 at 6-7.)  Plaintiff requested that Sergeant Porter "be reprimanded" and "retrained," and that plaintiff be awarded damages.

As noted above, plaintiff attached copies of the Out of Bounds and Job Performance RVRs to his grievance.  Both RVRs include sections setting forth the disposition of the charges raised therein.  In the Out of Bounds RVR, plaintiff was found guilty of violating California Code of Regulations, title 15, § 3015, and assessed a loss of weekend yard programming.  (ECF No. 59 at 17-18.)  Defendant Porter is listed in the Out of Bounds RVR as the "Reporting Employee," Sgt. T. Gomez as the "Reviewing Supervisor," and V. Mini as the "Chief Disciplinary Officer"; the RVR further provides, "Action By: D. Till," "Signature of Writer: D. Till," and "Reviewed By: R. Carter."  (Id.)  In the Job Performance RVR, Log No. A-11-08-003, plaintiff was found guilty of violating California Code of Regulations, title 15, § 3041(a), and assessed a loss of dayroom and yard programming, as well as telephone privileges, and referred to be considered for removal from his job assignment.  (Id. at 19-20.)  Defendant Porter is listed in the Job Performance RVR as the "Reporting Employee," Sgt. T. Hronek as the "Reviewing Supervisor," and L. Johnson-Dovey as the "Chief Disciplinary Officer"; the RVR further provides, "Action By: S. Norton," "Signature of Writer: S. Norton," and "Reviewed By: R. Carter."  (Id.)

////

13

Defendant Caraballo summarily denied the grievance at the first level, noting that the hiring authority had also reviewed the grievance and determined that it was not a "staff complaint." (ECF No. 53-3 at 6.) Plaintiff requested further review (in Part D of the appeal), on the following grounds:

> The First Level Response fails to address the appeal issues. Sgt. Porter and Sgt. Till conspired to draft fraudulent and factually impossible reports circumventing RVR processing mandates to do so, and arranged for a hearing to be had where a "false" finding of guilt could be assured. This is all due to my advocating (as a MAC member) on behalf of inmate Giraldes, who is housed in the CTC, and who Sgt. Porter and Sgt. Till tried to have assaulted. The advocating turned their rights (sic) towards me, and false retaliatory charges ensued. Inmates have the right to appeal an action and assist others in their appeals, and [it] is a guaranteed right that these sergeants are attempting to chill. All reports written by Sgt. Porter claim impossible scenarios, and are driven by my refusal to get Giraldes to withdraw his appeals against her and when I refused to withdraw the instant appeal, she and Sgt. Till immediately ordered I loose (sic) access to the assigned MAC office. Failure to address the actual issues in this appeal only proves the point to be made in the civil suit I am filing after exhaustion. The First Level reviewer, Sgt. Caraballo's intimidation tactic of calling me to Taj Mahal so he could seat me with Sgt. Till seated behind me asking me, "If I know who the hearing sergeants were?" and if I know who the staff are that involved in the false RVR situation, is a perfect example of the threats of reprisal, both implied and implemented. These staff use to get inmates to withdrawal their appeals. The reviewer left all issues unaddressed, and rewrote the appeal without making any actual findings. This is only beneficial as long as staff are hidden behind CSP-SAC walls. Please exhaust so we can get outside the walls where rational decision makers can decide if this conduct should go unpunished. The First Level Reviewer, Sgt. Caraballo, spent more time trying to convince me to withdraw the appeal than taking down my statement on my appeal issues, with Sgt. Till seated behind me in Taj Mahal.

(ECF No. 53-3 at 8.)

CSP-SAC Warden T. Virga denied the grievance at the second level of review. (Id.) Plaintiff sought to challenge the second level decision, based on the following allegations:

> This appellant re-submits this appeal to fully exhaust his CDCR appeal remedies based upon the fact that CDCR Sergeant K. Porter violated his constitutional rights as stated throughout this appeal process. She purposely and without provocation charged me with RVR reports solely to retaliate against me for reasons stated.

(Id.)

However, plaintiff's grievance was deemed exhausted at the second level. (DSUF 5.)

1  IV.  Analysis

2         Defendants Norton, Till, and Caraballo move for summary judgment in their favor,

3  contending that plaintiff has failed to exhaust administrative remedies with respect to his First

4  Amendment retaliation claims against them.  Specifically, defendants claim that plaintiff "never

5  submitted an administrative appeal regarding the alleged incidents involving Defendants

6  Caraballo, Norton, and Till."  (ECF No. 53 at 9.)  As discussed in further detail below,

7  defendants' argument is well-taken.

8         A.  Did plaintiff exhaust administrative remedies with respect to defendants Norton and

9             Till?

10        Plaintiff's initial first level grievance named only defendant Porter, as the correctional

11 officer who allegedly retaliated against plaintiff for providing litigation assistance to inmate

12 Giraldes, by charging plaintiff, for the third time, with an allegedly false rule violation.

13        Plaintiff argues that the reference in his first level grievance to "two impartial decision

14 makers (friends) of this sergeant [Porter]," when considered together with the Rules Violation

15 Reports that he attached as exhibits to the grievance, provided sufficient information to put prison

16 officials on notice as to the identities of defendants Till and Norton.

17        Plaintiff's argument is unpersuasive.  The grievance provides in pertinent part: "I have

18 two guilty findings now in my record (although dismissed and lowered to 128) due to two

19 impartial decision makers (friends) of this sergeant [Porter.]"  (ECF No. 53-3 at 7.)  The next

20 sentence reads, "Sergeant K.M. Porter's actions have violated my federal constitutional

21 rights . . . ."  (Id.)  The remedy sought by plaintiff is directed only at defendant Porter:  "(1) That

22 Sgt. Porter be reprimanded, (2) Re-trained, and (3) That I be awarded both monetary and punitive

23 damages for her deliberate and indifferent actions."  (ECF No. 53-3 at 6.)  Nowhere in the

24 grievance is there an allegation that the unnamed "decision makers (friends)" also violated

25 plaintiff's constitutional rights.  The Ninth Circuit has held that "when a prison's grievance

26 procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the

27 prison to the nature of the wrong for which redress is sought.'"  Griffin, 557 F.3d at 1120

28 (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)).  It does not appear to the court that

1    the allegations of the first level grievance would have alerted a reviewing appeals officer that

2    plaintiff had claims against any individual other than defendant Porter.

3            Furthermore, under the applicable regulation:

4                    The inmate or parolee shall list all staff member(s) involved and
                     shall describe their involvement in the issue. To assist in the
5                    identification of staff members, the inmate or parolee shall include
                     the staff member's last name, first initial, title or position, if known,
6                    and the dates of the staff member's involvement in the issue under
                     appeal. If the inmate or parolee does not have the requested
7                    identifying information about the staff member(s), he or she shall
                     provide any other available information that would assist the
8                    appeals coordinator in making a reasonable attempt to identify the
                     staff member(s) in question.
9

10   Cal. Code Regs. tit. 15, § 3084.2(a)(3).  The dispositive issue, then, is whether the proviso that

11   "[i]f the inmate . . . does not have the requested identifying information about the staff

12   member(s), he or she shall provide any other available information that would assist the appeals

13   coordinator in making a reasonable attempt to identify the staff member(s) in question," id.,

14   means that the appeals coordinator was required to take the steps necessary to verify that plaintiff

15   intended to name Till and Norton in his grievance, rather than one of the other five prison

16   officials (Gomez, Mini, Carter, Hronek, and Johnson-Dovey) listed in the attached Rules

17   Violation Reports.

18           The court is of the view that plaintiff's passing reference to "decision makers (friends)" of

19   defendant Porter failed to satisfy the requirements of § 3084.2(a)(3).  The deciding factor for the

20   court is that the information called for by the regulation was readily available to plaintiff in the

21   body of the pertinent Rules Violation Reports.  Defendants Till and Norton are identified therein,

22   by name, as the authors of the portions of the RVRs dealing with the RVRs' disposition.  In fact,

23   the RVRs provide all of the information required by the regulation:  Till and Norton's "last name,

24   first initial, title or position . . . and the dates of [their] involvement in the issue under

25   appeal . . . ."  Cal. Code Regs. tit. 15, § 3084.2(a)(3).  If plaintiff wished to name the person

26   whom he alleges (see Complaint, ECF No. 1 at 6) threatened him at the hearing on the Out of

27   Bounds RVR, defendant Till is identified in the RVR as the person who conducted the hearing

28

                                                    16

1   and wrote up the disposition.  If plaintiff meant to name the person whom he alleges (see id. at 7)

2   wrongly found him guilty at the hearing on the Job Performance RVR, defendant Norton is

3   similarly identified in that RVR as the person who conducted the hearing and wrote up the

4   disposition.  In other words, given that the requisite information was available to plaintiff, it was

5   not incumbent on the reviewing appeals officer to parse out to whom plaintiff could possibly have

6   been referring.

7         It therefore appears that plaintiff failed to exhaust administrative remedies with respect to

8   his claims against defendants Till and Norton.

9         B.  Did plaintiff exhaust administrative remedies with respect to defendant Caraballo?

10        Plaintiff first named defendant Caraballo in his second level appeal.  His allegations

11  therein concerned Caraballo's alleged conduct during the first level review.  Defendants argue

12  that "at the time Plaintiff submitted his original appeal, his issue with Caraballo had not yet

13  arisen.  Because Plaintiff's allegations against Defendant Caraballo, involved an entirely separate

14  incident involving the inmate appeals process, Plaintiff should have raised it in a separate

15  appeal."  (ECF No. 53 at 11.)

16        Plaintiff responds to this argument as follows:

17        Plaintiff will submit that Caraballo (the First Level appeals officer)
          was not added until the Second Level and thus, if the court deems
18        this violated procedure, plaintiff will not argue that finding.  But if
          the court reads the rules of construction in total, nowhere does it
19        preclude this as a default.

20  (ECF No. 59 at 6.)

21        Plaintiff's argument is unpersuasive, as he does not elaborate on the "rules of

22  construction" to which he refers.  Applicable regulations make clear that "[t]he inmate or parolee

23  is limited to one issue or related set of issues per each [first level] Inmate/Parolee Appeal form

24  submitted.  The inmate or parolee shall not combine unrelated issues on a single appeal form for

25  the purpose of circumventing appeal filing requirements."  Cal. Code Regs. tit. 15, § 3084.2(a)(1).

26  Further, "All appeals shall be initially submitted and screened at the first level unless the first

27  ////

28  ////

17

1    level is exempted . . . ."[7]  Cal. Code Regs. tit. 15, § 3084.7(a)(1).  Per CDCR's Department

2    Operations Manual, "Administrative remedies shall not be considered exhausted relative to any

3    new issue, information **or person** later named by the appellant that was not included in the

4    originally submitted CDCR Form 602 . . . ."  CDCR DOM § 54100.13.3 (emphasis added).

5    These regulations make clear that plaintiff cannot challenge acts that took place after he filed a

6    first level grievance in the second level appeal of that grievance.  If plaintiff wished to challenge

7    defendant Caraballo's actions in handling his (plaintiff's) first level grievance, the proper avenue

8    was to do so in a new first level grievance.  By not doing so, plaintiff failed to fully exhaust

9    administrative remedies with respect to his claims against defendant Caraballo.

10   V.  Conclusion

11           Based on the foregoing, IT IS HEREBY RECOMMENDED that:

12           1.  Defendants Till, Norton, and Caraballo's motion for summary judgment (ECF No. 53)

13               be granted; and

14           2.  The claims against these defendants be dismissed without prejudice.

15           These findings and recommendations are submitted to the United States District Judge

16   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

17   after being served with these findings and recommendations, any party may file written

18   objections with the court and serve a copy on all parties.  Such a document should be captioned

19   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

20   objections shall be served and filed within fourteen days after service of the objections.  The

21   parties are advised that failure to file objections within the specified time may waive the right to

22   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23   Dated:  May 14, 2015

24

25                                                    KENDALL J. NEWMAN
                                                     UNITED STATES MAGISTRATE JUDGE

26   /nune2775.msj.fte

27

28   _____
     [7] None of the listed exemptions applies.

18